## [No. 1709.]
### CITY OF OURAY v. CORSON.

1. CITIES AND TOWNS—ORDINANCES—LICENSE—CITY SCAVENGER.
Sections 3312 and 3313, General Statutes, authorizing cities and towns to enact ordinances necessary for the safety, health and comfort of their inhabitants gives to cities and towns ample power to pass an ordinance creating the office of city or town scavenger and providing that no other person shall do scavenger work for the citizens of the city or town without the payment of a license fee, fixed by the ordinance, and procuring a license, and fixing a penalty for the violation of the ordinance.

2. SAME.
An ordinance creating the office of city scavenger and defining his duties and prohibiting others from doing scavenger work without a license is not invalid because it fails to provide the special manner in which the scavenger work must be done.

*Appeal from the District Court of Ouray County.*

Mr. CARL J. SIGFRID and Mr. LYMAN I. HENRY, for appellant.

No appearance for appellee.

THOMSON, J.

The following is an ordinance of the city of Ouray, the violation of which is charged in this proceeding:

"Sec. 1. That there is hereby created the office of city scavenger. It shall be the duty of the scavenger to take up and haul away all filth, refuse, soil and trash that he may be directed to take away by the street commissioner or any member of the streets and alleys committee, and the same shall be taken to the grounds now used, or to be designated as city dump grounds.

"Sec. 2. The city scavenger may do work of a like kind for persons in the city of Ouray without paying a license therefor; and for all work done for either the city, or any

person, he shall receive such fees as may be fixed by resolution or contract; and the scavenger shall also be the contractor for the removal of dead animals as by ordinance provided and under the terms thereof.

"Sec. 3. No other person shall engage in the hauling away of filth, slops, refuse, waste, dirt, night soil, the cleaning of privy vaults or other work commonly known as scavenger work without first procuring license therefor, and the license therefor shall be one hundred dollars per annum, to be procured and issued as are other licenses; Provided, That the provisions of this ordinance shall not affect any citizen of this city, who shall with his own team or teams remove from the premises owned or occupied by him any refuse or such material as is herein contemplated.

"Sec. 4. Any person who violates the provisions of this ordinance shall on conviction be subject to a fine of not less than five dollars and not more than fifty dollars for each offense."

While this ordinance was in force, the appellee, who had no license to do scavenger work, took up and hauled away from the private grounds of certain citizens of Ouray, ashes, manure and débris, depositing them on the city dump ground. He did this work without the consent of the city scavenger, or the permit of any officer of the city, and the premises from which the filth and refuse were removed were not owned or occupied by him. At the time of the commission of the acts specified, there was a city scavenger, duly appointed and qualified in pursuance of the ordinance, and acting as such. These acts were charged against the appellee as a violation of the ordinance, and the police magistrate found him guilty, and adjudged a fine against him of $10.00. He appealed to the county court, and, by stipulation in that court, the case went to the district court, where the defendant was discharged. The city has brought the case here.

The act concerning towns and cities confers upon municipal corporations the power to enact such ordinances as shall seem necessary and proper to provide for the safety, preserve the

health, and improve the comfort and convenience of the corporation and its inhabitants; and to do all acts, and make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease. General Statutes, secs. 3312, 3313. By virtue of these statutory provisions the city had ample power to enact the ordinance in question.

The defendant is not represented in this court, and we are not advised by him of the nature of his objections to the ordinance, but the court below, in rendering its judgment, stated, at some length, its reasons for the conclusion at which it arrived, and these we shall proceed to consider.

While conceding the power in the premises of the city council, the court held that the ordinance was not a reasonable exercise of the power, in that it imposed no restrictions upon the scavenger as to when or how he should do his work; and in that by giving the scavenger and persons procuring the necessary license, the exclusive right to remove injurious and offensives substances, without subjecting them to the control of the city authorities, or to regulations having in view the health or convenience of the public, it operated to create a monopoly, and impose oppressive burdens on others desiring to engage in the same kind of work. In order to a clearer understanding of the views of the learned judge, we quote from his language, as follows:

"The removal of noxious, injurious and offensive substances within the city limits should be under the control of the city authorities. They have the right to prescribe the time it shall be removed, the method that shall be adopted for that purpose, the vehicles that shall be employed, appoint persons for that specific purpose, and, in short, prescribe all necessary means and requirements which are necessary to prevent infection, and preserve the city in good sanitary condition. These requirements may cause the individual some expense or result in some inconvenience, or tend to create a monopoly; but the object to be attained justifies the means to be employed if the exercise of power in this respect is reasonable and just.

" Let us test the provisions of the ordinance by these rules : It provides for the appointment of a city scavenger—this the city clearly has a right to do—it prescribes his duties as to work which it is necessary the city shall perform, and provides that he may do work of a like character for private individuals without license ; that individuals may engage in like work by paying the license fee of $100, and private individuals who own teams may do their own scavenger work. With the exception of the work which the city scavenger may do for the city, he is under no restriction as to when, how or in what manner he shall do his work. In the performance of work for private individuals he is not required to do so under the direction of any official ; for aught that appears from the ordinance he may employ any means or method, and perform his work in this respect at any time, without regard to the health or convenience of the public ; and so with private individuals who pay the license fee, or the individual who owns a team—either of these parties may perform their work in the most offensive manner to the public. * * * What is to be gained by requiring a private individual to pay a license fee for doing this kind of work in this city? He is not thereby placed under any restrictions whatever, nor is he under the control of any official ; he may do this work according to his own judgment and without any regard to the health, safety and comfort of the public. So with the individual who may remove débris from his own premises. The city scavenger in doing private work is under no restrictions. So that it will be seen from the provisions of the ordinance that the city has, in exercising its power relative to the removal of offal and filth from private grounds within the city limits, created a monopoly, or imposed upon those who desire to engage in work of this kind an unreasonable and unnecessary burden, without affording any protection to its inhabitants whatever against the dangers and inconveniences which naturally arise from removing and handling noxious and offensive substances."

We do not find it necessary to inquire what the general

nature of its provisions must be to warrant a court in declaring an ordinance unreasonable, and shall content ourselves with a discussion of the theory upon which the court proceeded in passing judgment upon this ordinance. It was evidently the opinion of the court that it was incumbent upon the city government to prescribe regulations having in view the health and comfort of the public, and in accordance with which scavenger work must be done; and that such regulations should be contained in the ordinance designating the persons authorized to do the work. That, as a general rule, in centers of population, the removal of noxious matter should be regulated by the constituted authorities, must be conceded; but it is manifest that precautions which would be necessary in a crowded city might be useless in a small and sparsely settled town; and under what restraints the removal of injurious or offensive material shall be conducted, is for the governing body of the municipality, which is familiar with the demands of the situation and the surrounding conditions, to determine. But it was not necessary that the ordinance under consideration, the evident purpose of which was only to create the office of city scavenger, and specify the conditions upon which others might do scavenger work, should contain the rules and regulations by which they were to be governed. The passage of the ordinance did not exhaust the power of the city over the subject-matter. The rules to be adopted might very properly be the subject of other municipal legislation, and would be subject to change from time to time, as conditions might vary. The statutory provisions in pursuance of which the ordinance was enacted, clothe the city with plenary power in matters pertaining to the public health; and the officers whom it may charge with the duty of maintaining cleanly and wholesome conditions, and other persons whom it may authorize to act in the same direction, are subject to its control, and bound by all the regulations it may from time to time see fit to adopt, not by virtue of its ordinance but by virtue of the statute itself. A few simple rules may suffice for a town in the first stages of

its growth, but as its population increases and becomes denser, further regulations may be a necessity, so that alterations and additions must follow the changing circumstances. It is therefore no valid objection to this ordinance that it did not, within itself, prescribe the times at which, or the manner in which, the scavenger, or the licensed person, or the owner of property using his own team, should do the work. Whatever was needful in such respects, could be supplied by other and succeeding ordinances. If no specific regulations were established, the presumption is that none were required; but, on the other hand, if such regulations became necessary, the presumption is that they were supplied.

A by-law of Boston ordained that no person should remove, through any of the streets, etc., of the city, any house-dirt, refuse, offal, filth, or animal or vegetable substances from any of the dwelling houses or other places occupied by the inhabitants, unless such person, together with the cart, or other vehicle, should be duly licensed for the purpose by the mayor and aldermen upon such terms and conditions as they should deem the health, comfort, convenience or interest of the city to require. In a prosecution for a violation of this by-law the judge charged the jury that under the statute it was the duty of the city to remove from the streets and houses all nuisances which might generate disease, or be prejudicial to the health of the inhabitants; that it was both reasonable and proper that it should be in their discretion to contract with persons to perform the work so that it might be done on a general system; and that if it were found on experiment that the duty would not be thoroughly and faithfully performed, or would be attended with more expense to the city, if individuals should remove those substances in their own carts, and upon their own account, it was competent for the city government to enact a by-law which should subject all such persons to the vigilance of that government, and which should require them to be first licensed. The case went to the supreme judicial court of Massachusetts, where the foregoing instruction was approved in its entirety, and the by-law held to be valid, the court saying further:

" But it is contended that this by-law is void as it is in restraint of trade, and operates as a monopoly.   Every regulation of trade is in some sense a restraint upon it; it is some clog or impediment, but it does not therefore follow that it is to be vacated.   If the regulating is unreasonable, it is void; if necessary for the good government of society, it is good.  * * * There have been regulations also adopted in that city, that none shall be brokers unless licensed; and some, that none shall be hawkers without a license; thus in some measure restraining the natural rights of the subjects.   Now it is contended that the by-law under consideration is in restraint, and not a mere regulation, of the trade in which the defendant is engaged; that he provides as good and tight carts as the men who are authorized by the city, in the performance of this labor.   We do not perceive that there is any more reason to complain of the law requiring a license to do this work, than of the law prohibiting the keeping of livery stables in any place not licensed.   One might just as well complain of the regulation which prevents him from being an auctioneer without a license; and so of various other trades and concerns which it is found necessary to subject to such restriction."   *Vandine's Petition*, 6 Pick. 187.

The Boston by-law provided no rules or regulations in conformity with which the work of the licensee was to be done, and in such respect was similar to the ordinance under consideration.   It is true that it reserved to the mayor and aldermen the power to impose such conditions upon the grant of license as, in their opinion, the health, comfort, convenience or interest of the city might require; and it is true that the ordinance before us contains no such provision.   What the statute of Massachusetts was, from which the by-law derived its authority, we do not know; but a provision of that kind in this ordinance would be superfluous, because the statute which authorized its enactment, conferred upon the city all necessary power in the premises; and the city could not by ordinance either add to or detract from, its statutory powers.  It plainly appears that whatever authority the mayor and

aldermen of Boston had to prescribe the terms and conditions upon which a license should issue, was to be exercised after the adoption of the by-law; and it does not seem to have occurred to the court that they ought to be found in the by-law itself. There is no reason why the ordinance in question here, the only purpose which was to create the office of city scavenger, and prescribe the terms upon which other persons might do scavenger work, should embrace any specific regulations concerning the manner in which the work should be done. Such regulations could, equally well, come afterwards; and in so far as changed conditions might require their modification or enlargement, they must, in the nature of things, come afterwards.

.The sole ground of the court's decision was the absence from the ordinance of any provision prescribing the manner in which scavenger work should be done, and, in our opinion, that ground is not tenable. We believe the ordinance to be valid, and its provisions enforcible.

The judgment is reversed.

*Reversed.*